```
               UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON


UNITED STATES OF AMERICA

v.                          CRIMINAL ACTION NO. 2:12-00152

SHAWN LESTER



UNITED STATES OF AMERICA

v.                          CRIMINAL ACTION NO. 2:11-00258

SHAWN THOMAS LESTER
```

## MEMORANDUM OPINION AND ORDER

On August 4, 2011, a Kanawha County grand jury returned a five-count indictment against defendant ("state indictment").  Count One charged him and Gilberto Lopez with a conspiracy to manufacture, deliver, and possess with intent to manufacture and deliver methamphetamine, in violation of West Virginia Code sections 61-10-31 and 60A-4-401.  Count Two charged defendant alone with the manufacture, delivery, and possession with intent to manufacture and deliver methamphetamine, in violation of West Virginia Code section 60A-4-401.  Counts Three through Five charged defendant with the first degree murders respectively of Gary Carrier, Jr., Jeanie

Lynn Patton, and Okey R. Meadows, in violation of West Virginia Code section 61-2-1.

On November 8, 2011, a federal grand jury in this district returned an indictment charging defendant in two counts ("first federal indictment").  Count One alleged his possession of a firearm after having been convicted of two felony offenses, in violation of 18 U.S.C. § 922(g)(1).  Count Two charged possession of a firearm at a time when defendant was an unlawful user of, and addicted to, a controlled substance, in violation of 18 U.S.C. § 922(g)(3).

On January 30, 2012, defendant entered his written plea of guilty to the first federal indictment without the benefit of a plea agreement.  He was as a result subject to a statutory maximum term of imprisonment of 10 years on each of Counts One and Two.  On July 10, 2012, the federal grand jury returned another indictment charging defendant with a single violation of conspiring to distribute quantities of oxycodone and cocaine, in violation of 21 U.S.C. § 846 ("second federal indictment").  The charge carried a maximum term of imprisonment of 20 years.

On July 30, 2012, defendant and the state entered into an agreement under which he agreed to plead guilty to the second

degree murder of Ms. Patton, which carried a potential penalty of 10 to 40 years imprisonment, with the remaining charges in the state indictment being dismissed.  The agreement contained a prosecutorial recommendation of 30 years imprisonment.  The agreement further provided as follows:

> It is . . . understood that should any party to this agreement fail to meet the terms and conditions of this agreement, than [sic] this agreement should terminate as null and void.
>
>     . . . .
>
> The above six (6) paragraphs constitute the entire agreement between Shawn Lester and the State of West Virginia.

(State Plea Agmt. at 1-2).  On August 31, 2012, having earlier accepted the defendant's murder plea, the state circuit court, the Honorable Louis Bloom, Kanawha County Circuit Judge, presiding, sentenced defendant to a term of 40 years imprisonment.

On September 26, 2012, the defendant appeared for sentencing on the first federal indictment and a plea hearing respecting the second federal indictment.  The parties presented the court with a proposed plea agreement ("federal plea agreement") that provided, <u>inter alia</u>, as follows:

> Pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, the United States and Mr. Lester agree that in exchange for the dismissal of the [second federal indictment] . . . . Mr. Lester should receive the following sentence [on the first federal

    indictment]:

> Count One - a term of imprisonment of 10 years;
>
> Count Two - a term of imprisonment of 10 years, to run consecutively to the sentence imposed in Count One.  Further, Counts One and Two will run concurrently with the [40-year sentence imposed by Judge Bloom] . . . .

(Fed. Plea Agmt. at 1-2).

    The upshot of the proposed federal plea agreement was that the defendant would serve no more than 20 years in custody on the federal charges <u>and</u> that the proposed 20-year federal term would be running at the same time as the 40-year sentence imposed by Judge Bloom.  One additional fact is also relevant, as noted by the undersigned during the September 26, 2012, plea hearing:

> I would ask the parties whether you are in agreement that under the state system, that the defendant is entitled to good time credit of one day for each day served, so that with good time credit, the defendant's effective [total state and federal] sentence would be 20 years.

Both parties concurred with the court's assessment.  The court further noted that defendant would normally be eligible for a state parole hearing in as little as 10 years.

    In the event that the court approved the proposed federal plea agreement and sentence, then, defendant, accruing the maximum amount of good time, could secure his freedom on the

4

state <u>and</u> federal charges in a 10 to 20 year period of time. This would occur despite the 40-year term imposed by Judge Bloom and defendant's additional exposure to 20-year statutory maximum terms of imprisonment respectively on each of the first and second federal indictments, for a total imposable term of imprisonment of 80 years on the entirety of the state and federal charges.  The proposed federal plea agreement, if approved, would thus result in defendant, in all likelihood, essentially receiving no punishment for the serious charges alleged in the first and second federal indictments.

## II.

Federal Rule of Criminal Procedure 11(e)(1)(C) provides as follows:

> If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> . . . .
>
> (C) agree that a specific sentence . . . is the appropriate disposition of the case . . . . (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. Proc. 11(c)(1)(C).  Rule 11(c)(5) additionally provides as follows:

> If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1) . . . (C), the court must do the following on the record and in open court . . . :
>
>> (A) inform the parties that the court rejects the plea agreement;
>>
>> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>>
>> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. Proc. 11(c)(5).

In United States v. Lewis, 633 F.3d 262 (4th Cir. 2011), our court of appeals discussed the critical role that plea agreements play in our system of justice:

> The plea agreement process is an essential aspect of the administration of criminal justice in our scheme of government. Criminal defendants and the prosecuting authorities utilize such agreements, as a matter of course, to dispose of the vast majority of all federal criminal cases. As a result, the courts have a vital interest in assuring that such agreements are adhered to and handled properly.

Id. at 269.  It additionally observed that "if the court accepts a plea agreement" under Rule 11(c)(1)(C), "it is thereby bound by any . . . provisions that are contained therein." Id. at 270.  For this reason, a district court may exercise its discretion to reject a proposed plea deal:

6

>     Nevertheless, a district court is not obliged to
> accept a particular plea agreement between the
> government and an accused, as it always has the
> authority to either accept or reject any agreement.

**Id.** at 270.

As noted during the September 26, 2012, hearing in these two federal cases, the court rejected the proposed federal plea agreement inasmuch as its sentencing provisions, which would have been binding upon the court if accepted, did not provide a reasonable punishment for the charges alleged in the first federal indictment and no punishment at all for the charges in the second federal indictment. As required by Rule 11(c)(5), the defendant was advised of the court's decision and given the opportunity to withdraw from his guilty plea to the first federal indictment, an opportunity of which he availed himself.

Consequently, it is ORDERED that the January 30, 2012, guilty plea and conviction be, and they hereby are, respectively set aside and vacated.

It was only at the point in the proceeding, after both (1) the court's rejection of the proposed federal plea agreement, and (2) defendant's withdrawal from his guilty plea

to the first federal indictment, that the following disclosure was made:

> Your Honor may or may not be aware that this federal plea was implicated in the state plea, and with the federal plea not accepted, Mr. Lester now has an opportunity to withdraw his state plea. Therefore, there is a possibility that there may be a state trial on the state charges. In other words, everything is up in the air.

Additionally, the court learned moments later that the informal agreement said to exist respecting the federal and state charges was not disclosed to Judge Bloom, was not in writing, and was not spread on the record, but only "understood" between the prosecution and defense.

    The Clerk is directed to forward copies of this written opinion and order to all counsel of record, the United States Marshal, and the United States Probation Office.

DATED: November 9, 2012

_____
John T. Copenhaver, Jr.
United States District Judge